UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE<br>LYNN CHRISTINE ORCHARD,<br>                                Debtor. | Bankruptcy Case<br>No. 09-65380-tmr13 |
| LYNN CHRISTINE ORCHARD,<br>                                Plaintiff,<br>           v.<br>JPMORGAN CHASE BANK, N.A. and<br>ROUTH CRABTREE OLSEN, P.C.,<br>                              Defendants. | Adversary Proceeding<br>No. 12-6197-tmr<br><br>MEMORANDUM OPINION |

This matter comes before the Court on its own motion as to whether jury trial rights attach to the claims pled in the instant adversary proceeding and whether certain of those claims are precluded by remedies provided by the Bankruptcy Code.

Procedural Background:

Debtor/Plaintiff filed her Chapter 13 petition on October 2, 2009. She is operating under a plan dated October 1, 2009, and confirmed on December 15, 2009. She owns a home in Toledo, Oregon. JPMorgan Chase Bank NA (**Chase**) holds a note and first trust deed on the home. Under the Plan, Plaintiff is curing an arrearage by payments through the trustee, and is making her regular note payments directly to Chase.

MEMORANDUM OPINION-1

Plaintiff filed the instant adversary proceeding on December 21, 2012. She originally pled four claims against Chase and its law firm, Routh Crabtree Olsen, P.C. (**RCO**), namely: 1) willful violation of the automatic stay under 11 U.S.C. § 362(k)[1]; 2) contempt for willful violation of the automatic stay; 3) counts under the Oregon Unlawful Debt Collection Practices Act (**OUDCPA**); and 4) counts under the Federal Fair Debt Collection Practices Act (**FDCPA**) (against RCO only).

At a June 11, 2013, pre-trial conference, the parties advised that matters had been resolved with Chase and a stipulated order would be submitted.[2] Plaintiff's counsel advised he would be filing an amended complaint as to RCO, which would remove the contempt and OUDCPA claims. On June 17, 2013, this Court entered an order (**the Order**) giving Plaintiff until July 22, 2013, to file an amended complaint, wherein she was to specifically designate the claims upon which she was entitled to a jury trial, whether she consented to a jury trial in bankruptcy court, and whether the bankruptcy court had the constitutional authority to determine the asserted claims. The Order further provided that RCO must, in its answer, specifically admit or deny Plaintiff's allegations regarding her jury trial right, and specify whether, without admitting such right exists, it consented to a jury trial before the bankruptcy court. It was also to specify its position as to whether the Court had constitutional authority to determine the asserted claims. The Order called for simultaneous briefs by August 5, 2013, on any right to jury trial alleged in the pleadings, even if both parties agreed such a right existed, and whether preemption applied to any claims other than the one under § 362(k).

Plaintiff timely filed an Amended Complaint (**AC**) against RCO only. The AC contains two claims. the first under § 362(k) for willful violation of the stay, and the second under the FDCPA alleging multiple counts. Plaintiff alleges both claims are "related to" Plaintiff's Chapter 13 case but that she consents to entry of a final judgment by the bankruptcy court. Plaintiff also asserts a jury trial right on the FDCPA claim, and

---

[1] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

[2] Subsequently, a stipulated judgment dismissing Chase with prejudice was tendered, and has been entered.

MEMORANDUM OPINION-2

she consents to a jury trial before the bankruptcy court. RCO filed an Answer denying the material allegations and asserting two affirmative defenses. It admits the two claims are "related to" the case. Contrary to the Order, however, the Answer does not specify whether RCO consents to the Court entering a final judgment (i.e., whether the Court has the constitutional authority to do so), instead merely admitting Plaintiff's allegations that the Court has such authority only if RCO consents. RCO denies Plaintiff has a right to jury trial on the FDCPA claim, but it again, contrary to the Order, does not state whether it consents to the Court conducting the jury trial assuming (and without waiving its contrary position) that such a right exists.

Plaintiff has timely filed a brief on the jury trial and preemption issues. RCO did not file a brief.

Discussion:

As noted, the Court solicited the parties' positions on jury trial and "preemption" issues. Those issues are discussed below. However, the Court will first take up its jurisdiction and constitutional authority to enter a final judgment.

Jurisdiction:

The Court has an independent duty to assure itself of its subject matter jurisdiction. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 769 n.5 (9th Cir. 2008). The district courts have jurisdiction of "all cases under title 11," 28 U.S.C. § 1334(a), and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In turn, the district court may refer all of those matters to the bankruptcy court, 28 U.S.C. § 157(a), which by LR 2100-1(a), the Oregon District Court has done.

The § 362(k)[3] claim is one "arising under" Title 11 because it is a "cause[ ] of action created or determined by a statutory provision of that title." Wilshire Courtyard v. Cal. Franchise Tax Bd., 729 F.3d

---

[3] Section 362(k)(1) provides in pertinent part that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

MEMORANDUM OPINION-3

1279, 1285 (9th Cir. 2013); see also Davis v. Courington (In re Davis), 177 B.R. 907, 912 (9th Cir. BAP 1995) (construing predecessor to § 362(k)).[4]

The FDCPA claim is not created or determined by the Bankruptcy Code and thus does not "arise under" Title 11. Wilshire Courtyard, 729 F.3d at 1285. Further, it could exist outside of a bankruptcy case and thus does not "arise in" a case under Title 11. Id. As set out in the AC and the Answer, the parties believe the FDCPA claim is "related to" Plaintiff's Chapter 13 case. The Court agrees. In Fietz v. Great W. Sav. (In re Fietz), 852 F.2d 455 (9th Cir. 1988), the Ninth Circuit Court of Appeals adopted the so-called Pacor test for "related to" jurisdiction as follows:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Id. at 457 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original)). Since Fietz, the Circuit has narrowed the test for post-confirmation matters in Chapter 11 cases. There, for "related to" jurisdiction to attach, the matter must affect the "interpretation, implementation, consummation, execution, or administration of the confirmed plan" (i.e., the "close-nexus" test). Wilshire Courtyard, 729 F.3d at 1287 (internal quotation omitted). It is unclear whether the "close-nexus" test would extend to Chapter 13 cases post-confirmation. In any event, here, the FDCPA claim meets either test.

Applying the Pacor test, Fietz is on point and, at least as to Chapter 13 cases, demonstrates that "related to" jurisdiction extends to post-confirmation matters which, while technically not affecting the estate, do affect case administration and, in particular, assets available for creditors. There, debtor's wife asserted a cross-claim post-confirmation against debtor's mortgagee. The court assumed the cross-claim would have been a community asset and thus part of the debtor's estate. However, the cross-claim was

---

[4] Both parties mistakenly label the § 362(k) claim as "related to" Plaintiff's Chapter 13 case. See Amended Complaint at ¶ 8; Answer at ¶ 8.

MEMORANDUM OPINION-4

asserted post-confirmation when estate assets, by virtue of § 1327(b), had re-vested in the debtor. The court held the bankruptcy court did not have jurisdiction over the cross-claim, not because the estate ceased to exist post-confirmation, but rather because the Bankruptcy Code at the time did not allow creditors or the trustee to file modified plans should assets arise which could increase creditors' recovery. Then, that right belonged only to the debtor. Here, the same scenario is present, except the Code now allows unsecured creditors and the trustee to file modified plans. § 1329(a).[5] Similarly under the close-nexus test, the FDCPA claim would involve both the plan's implementation and its administration. Thus, under either test, the FDCPA claim is "related to" Plaintiff's Chapter 13 case.

Constitutional Authority to Enter a Final Judgment:

Because the § 362(k) claim "arises under" Title 11, it is a "core" proceeding. 28 U.S.C. § 157(b)(1). In most cases, a "core" designation allows the bankruptcy court to enter a final judgment regardless of the parties' consent. Id. However, the Supreme Court in Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594 (2011), carved out an exception for certain core matters that do not "stem" from the bankruptcy or would not "necessarily be resolved in the claims allowance process." 131 S. Ct. at 2618. For those matters, Article III of the U.S. Constitution guarantees final judgment by a judge with life tenure and non-reducible salary. Id. The issue at bar is whether a § 362(k) action falls under Stern. Although the Court did not request briefs on this question, it did ask the parties to take a position in the pleadings. Although Plaintiff wrongly characterized the § 362(k) claim as "related to," she nevertheless consented to the Court entering a final judgment. Such consent (or waiver of the Article III right) is permissible even if the matter is "core" but falls within Stern's holding. Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Insurance Agency, Inc.), 702 F.3d 553, 567 (9th Cir. 2012), cert. granted,133 S. Ct. 2880 (2013).

As noted above, RCO, contrary to the Order's directive, did not take a position. To address this failing, RCO must file within seven days either an amended answer or a separate pleading, specifically stating whether it consents to this Court entering a final judgment on the § 362(k) claim. If it does not so

---

[5] In addition, the confirmation order requires Plaintiff to report to the trustee any right to distribution of more than $2,500 (other than regular monthly income).

MEMORANDUM OPINION-5

consent, it must also file a brief as to why a § 362(k) claim comes within Stern's ambit. Failure to comply will expose RCO to appropriate sanctions under LBR 9011-3, § 105, and/or the Court's inherent power, ranging from a monetary award to a default order.

Turning to the FDCPA claim, being "related to," the parties have a statutory right to have the claim finally determined by an Article III judge. 28 U.S.C. § 157(c)(1) (bankruptcy judge must make proposed findings of fact and conclusions of law on "related to" matters). Therefore the Court need not address whether there is a constitutional right to an Article III judge. Of course, the parties may waive their statutory right and consent to this Court entering a final judgment. 28 U.S.C. § 157(c)(2). As with the § 362(k) claim, Plaintiff has consented while RCO has taken no position. As above, the Court will require RCO to take a position within seven days on pain of possible sanctions.

Preclusion of FDCPA Claim:

The Court solicited briefs on whether the doctrine of "preemption" applies to any claim other than the one under § 362(k). Because Plaintiff abandoned her OUDCPA claim, this issue is now addressed solely to the FDCPA claim. In that regard, the use of the term "preemption" is technically incorrect, as that doctrine only applies to potential conflicts between state and federal law.[6] McCarther-Morgan v. Asset Acceptance, LLC (In re McCarther-Morgan), No. SC-08-1093-KwMoJu, 2009 WL 7810817, at *9 (9th Cir. BAP Jan. 27, 2009). Rather, potential conflicts between two federal statutes are analyzed as to whether one "precludes" (as opposed to "preempts"), the other. Id. Plaintiff, however, understood the Court's intention and has briefed the issue.

Because "preclusion" goes either to subject matter jurisdiction, Saridakis v. United Airlines, 166 F.3d 1272, 1275-1276 (9th Cir. 1999), or whether a claim has been stated, Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 505 (9th Cir. 2002), the court may raise the issue sua sponte. Rosson, 545 F.3d at 769 n.5 (subject matter jurisdiction); Wong v. Bell, 642 F.2d 359, 361-362 (9th Cir. 1981) (failure to state a claim). The analysis begins with Walls. There, a creditor solicited and collected payments from the debtor post-

---

[6] The term "preemption" would thus have been appropriate as to the OUDCPA claims had they remained in the case.

MEMORANDUM OPINION-6

discharge. The debtor filed a class action suit for both violation of the discharge injunction and the FDCPA. The only alleged FDCPA violation was the creditor's unconscionable attempt to collect a debt not permitted by law, more particularly, in violation of the discharge injunction. The court held the FDCPA claim was precluded because resolving it entailed "bankruptcy-laden" determinations. Id. at 510. It explained that the Bankruptcy Code's contempt remedy for violation of the discharge injunction was a sufficient remedy, and that allowing the FDCPA claim would permit through the "back door" what Congress intended to prohibit through the front door, that is, a private right of action for violating the discharge injunction. Id. It noted this would circumvent the Bankruptcy Code's comprehensive remedial scheme which carefully balances the interests of both debtors and creditors, id., noting that "while the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and [contempt] remedy remain under the Bankruptcy Code." Id.

In Stoiber v. Galpern (In re Stoiber), No. 08-6052-fra, 2008 WL 2473657, at *4 (Bankr. D. Or. June 18, 2008), Judge Alley extended Walls' "preclusion" rationale to the automatic stay context. There, an FDCPA claim based entirely on a violation of the automatic stay was precluded by the Bankruptcy Code's remedies. Id.; see also Harvey v. AllianceOne Receivables Mgmt.,Inc., No. CV-10-5091-RMP, 2011 WL 2791078, at *2 (E.D. Wash. July 18, 2011)(same). Stoiber was a logical extension of Walls. The Bankruptcy Code's scheme as to the automatic stay is at least as comprehensive as its scheme involving the discharge injunction. Specific statutes govern the stay's scope, § 362(a)-(b), and duration, § 362(c), (h), as well as obtaining relief therefrom, § 362(d), and damages for its violation. § 362(k) (individuals); § 105/contempt (for non-individuals, and possibly for individuals).

Plaintiff cites to Tobener v. Hilco Receivables (In re Tobener), No. 09-1127, 2009 WL 5215404 (Bankr. N.D. Cal. 2009), in support of her position. There, the plaintiff brought claims under § 362(k), the FDCPA, and California law. The defendant moved to dismiss the FDCPA and state law claims. The court denied the motion, holding FRCP 12(b)(6) required an all or nothing approach, and that, because the § 362(k) claim was clearly well-pled, the complaint could stand. In doing so, the court distinguished Walls, as there, no private right of action attached for violation of the discharge injunction, whereas § 362(k) clearly

MEMORANDUM OPINION-7

provided such a right for violation of the automatic stay. <u>Tobener's</u> holding appears to be based on the court's interpretation of FRCP 12(b)(6), rather than a refusal to extend <u>Walls</u> to the automatic stay context. Nowhere in the opinion does the court discuss or analyze the "stay" issue. Even reading <u>Tobener</u> as supporting Plaintiff's position, it appears to go against the weight of authority, including this Court's prior holding, and will not be followed.

<u>Walls</u>' holding does not necessarily mean, however, that all federal or state law claims made in conjunction with automatic stay or discharge violations are precluded. Only those which involve "bankruptcy-laden" determinations are barred. Put another way, if the claim could exist independent of the bankruptcy, it will not be precluded or preempted. In <u>Thomas v. U.S. Bank N.A.</u>, No. CV 05-1725-MO, 2007 WL 764312 (D. Or. March 8, 2007), the plaintiff alleged a violation of OUDCPA by a creditor's attempt to collect an "obsolete" debt. However, the alleged obsolescence had nothing to do with the plaintiff's bankruptcy discharge. The court, distinguishing <u>Walls</u>, held the claim was not preempted, because resolving it did not necessarily entail "bankruptcy-laden determinations." <u>Id.</u> at *9. More to the point at bar, in <u>Walch v. Columbia Collection Serv. Inc.</u>, No. 03:12-cv-00345-HU, 2012 WL 4093826 (D. Or. June 19, 2012), <u>findings and recom. adopted</u>, 2012 WL 4092651 (D. Or. Sept. 17, 2012), the court opined that two FDCPA counts which required determination of whether the discharge injunction was in turn violated would likely be precluded, but that a count based on the defendant's alleged direct communications with the plaintiff despite its knowledge he was represented by counsel would likely survive, as that count did "not implicate the Bankruptcy Code and Rules." <u>Id.</u> at *4. Likewise, in <u>Church v. OneWest Bank FSB</u>, No. CV-10-1057-HU, 2011 WL 2444719 (D. Or. Jan. 18, 2011), <u>findings and recom. adopted</u>, 2011 WL 2419896 (D. Or. June 15, 2011), the court dismissed the one FDCPA count that required determination of whether the debt was valid, as that necessarily required determination of whether the debt had been discharged. However, it retained all other FDCPA claims, including those based on: (A) contacting plaintiff at an unusual time or place, or at a time or place known or which should be known to be inconvenient to plaintiff (15 U.S.C. § 1692c(a)(1)); (B) contacting plaintiff directly after being advised that she was represented by counsel (15 U.S.C. § 1692c(a)(2)); (C) contacting plaintiff after being notified to cease further

MEMORANDUM OPINION-8

communications (15 U.S.C § 1692c(c)); (D) failing to disclose in the initial written communication with plaintiff that the debt collector was trying to collect a debt and that any information would be used for that purpose (15 U.S.C. § 1692e(11)); and (E) failing to issue an appropriate validation notice (15 U.S.C. § 1692g). Id. at *2. The court reasoned those claims could stand because their resolution did not involve "bankruptcy-laden" determinations." Id. at *8.

Here, Plaintiff has alleged nine FDCPA counts, all of which have as their gravamen a December 13, 2012, letter RCO sent directly to Plaintiff advising that her loan with Chase had been placed in foreclosure. See Ex. #1 to AC. At this stage of the proceedings, the Court has reviewed those counts as pled, for plausibility, in the light most favorable to Plaintiff, accepting the allegations as true, and giving Plaintiff all reasonable inferences. Walch, 2012 WL 4092651, at *2. Based on that review, four of the counts do not involve bankruptcy-laden determinations, namely Counts Three,[7] Six,[8] Seven,[9] and Nine,[10] and are not

---

[7] Count Three (AC at ¶ 48), is under 15 U.S.C. § 1692e(2)(A) which prohibits a false representation of the "character, amount, or legal status of any debt." False representations as to the amount of the debt could plausibly be independent of the bankruptcy, while representations as to its legal status would be "determined only by reference to the Bankruptcy Code." Church, 2011 WL 2444719, at *8.

[8] Count Six (AC at ¶ 51), is under 15 U.S.C. § 1692e(11) based on "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . ." See Church, 2011 WL 2444719, at *8 (preserving an identical claim).

[9] Count Seven (AC at ¶ 52), is under 15 U.S.C. § 1692f(1) which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

[10] Count Nine (AC at ¶ 54), is under 15 U.S.C. § 1692c(a)(2), which prohibits a debt collector from communicating directly with a represented consumer without her consent, if the collector knows of such representation and can readily ascertain the attorney's name and address. See Walch, 2012 WL 4093826, at *4-5 (refusing to dismiss an identical claim).

MEMORANDUM OPINION-9

precluded. The balance of the counts will be dismissed as they can be "determined only be reference to the Bankruptcy Code." Church, 2011 WL 2444719, at *8.[11]

Right to Jury Trial on FDCPA Claim:

RCO did not request a jury trial on either of Plaintiff's claims. Plaintiff has only requested a jury trial on the FDCPA claim. In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S. Ct. 2782 (1989), the Supreme Court set out a three-step test for determining when there is a constitutional right to a jury trial in a bankruptcy proceeding:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Tull v. United States, 481 U.S. 412, 417-418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted). The second stage of this analysis is more important than the first. Id. at 421, 107 S. Ct. at 1837. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

492 U.S. at 42, 109 S. Ct. at 2790.

Examining the first two steps, the vast majority of caselaw holds that an FDCPA claim is analogous to a tort action at law for damages, and thus a right to a jury trial attaches. See, e.g., Sibley v. Fulton DeKalb Collection Serv., 677 F.2d 830, 834 (11th Cir. 1982); Kobs v. Arrow Serv. Bureau, Inc., 134 F.3d 893, 897-898 (7th Cir. 1998).

Turning to the third step:

> Granfinanciera reasoned that Congress could not deprive parties of their Seventh Amendment right to a jury trial by assigning the matter to the bankruptcy court for determination unless the cause of action involves "public rights". 109 S.Ct. at 2795-96. The Court rejected the view that "public rights" must at a minimum arise between the government and others and explained

---

[11] In fact, Plaintiff has essentially argued the only counts independent of the Code are those based on "collecting a balance in excess of what was owed," and "directly contacting a represented party." Plaintiff's Brief [Doc. #23] at 8:10-14. Arguably, those allegations encompass only Counts Three, Seven, and Nine. The Court, however, will not treat this representation as an admission, and, in its own review, has concluded Count Six is also independent of the Bankruptcy Code.

MEMORANDUM OPINION-10

> that the crucial question is whether the right at issue is closely intertwined with a federal regulatory scheme that Congress had the power to enact. 109 S. Ct. at 2797.
>
> . . . .
>
> Under Granfinanciera and Langenkamp [v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990),] a party may engage in conduct, such as the filing of a proof of claim, that causes the loss of its right to a jury trial. Whether such conduct causes the loss of this right is best analyzed under the third prong of the Granfinanciera analysis. Under that analysis, the question is whether the conduct has the effect of changing the otherwise private right into a public right and bringing the matter within the permissible scope of the bankruptcy court's equity jurisdiction by triggering the claim allowance process or making the proceeding integral to the restructuring of the debtor creditor relations.

Waterman v. Brownstein, Rask (In re Waterman), Adv. # 93-3670-elp at pp.6-8 (Bankr. D. Or. April 25, 1995) (unpublished) (Perris, J.). Some courts have characterized the conversion of a private right to a public one as "waiver" of the jury trial right. Dunmore v. United States, 358 F.3d 1107, 1116 (9th Cir. 2004).[12] Either way one characterizes it, the inquiry is whether the matter is "'vital to the bankruptcy process,' including disputes that are part of the claims-allowance process and the hierarchical reordering of . . . creditors' claims." Id. (quoting Germain v. Conn. Nat'l Bank, 988 F.2d 1323,1329–1330 (2d Cir.1993)). Put another way, a debtor gives up her jury trial rights on all matters that are "integral to the adjustment of the debtor-creditor relationship." Hickman, 384 B.R. at 838.

This three-step test is the same one applied to determine whether an Article III judge must enter a final judgment absent the parties' consent to a non-Article III adjudication. Arkison, 702 F.3d at 563 (concluding that under Stern, Seventh Amendment jury trial and Article III rights are co-extensive). Stern slightly re-phrased the salient step-three question on private vs. public rights, as to whether the "action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."

---

[12] The Bankruptcy Appellate Panel has clarified that this is not "waiver" in the sense of not timely demanding a jury trial under FRCP 38. Hickman v. Hana (In re Hickman), 384 B.R. 832, 839 n.4 (9th Cir. BAP 2008). "Rather, the actor elects to pursue a remedial scheme in which a jury trial is not available and agrees to be bound by the result." Id.

MEMORANDUM OPINION-11

Stern, 131 S. Ct. at 2618.[13] If so, a "public right" is implicated. In contrast, Stern emphasized that traditional actions at law that merely augment the bankruptcy estate do not involve public rights. Id. at 2618. Here, the remaining FDCPA counts resemble claims to augment the assets available to creditors, much like the trustees' fraudulent transfer claims in Bellingham and Granfinanciera and the debtor's counterclaim in Stern, and not claims "integral to the debtor-creditor relationship" or that "stem" from the bankruptcy itself. Thus, a jury trial right would appear to attach.

Of note, however, is Potter v. EMC Mortg. Corp., No. 09-6111-aer, 2010 WL 9039915, at *2 (Bankr. D. Or. March 2, 2010), where Judge Radcliffe held that if an FDCPA claim's factual allegations are "inextricably intertwined" with automatic stay violation claims and/or the attempted collection of the defendant's underlying claim, then no jury trial right attaches.[14] As to the latter point, here, RCO was not attempting to collect its claim, but rather Chase's. In fact, RCO has not filed a claim. Further, it is possible, in light of the above authority, that the "inextricably intertwined" test too narrowly circumscribes a plaintiff-

---

[13] The Stern court acknowledged that the claims allowance process was "integral to the restructuring of the debtor-creditor relationship." 131 S. Ct. at 2617 (internal quotation omitted).

[14] In Potter, the debtors operated under a confirmed Chapter 13 plan, as here, wherein they proposed to cure their home mortgage arrearage and continue direct monthly maintenance payments. They then defaulted on their maintenance payments, and a series of orders allowing cure on pain of relief from stay were entered. The debtors completed their plan payments and obtained their discharge. They then reopened the case and filed an action for violation of the FDCPA, RESPA and for contempt of the confirmation and "cure" orders. The claims were based on: "1) wrongful declaration of default; 2) failure to accept payments; 3) failure to accurately account for payments; 4) wrongful initiation of non-judicial foreclosure proceedings; 5) false reporting of a derogatory payment history to the national credit reporting agencies; and 6) other attempts to collect fees and costs not owed." The acts took place post-discharge and case closure, but related to alleged defaults accruing post-confirmation, pre-discharge. 2010 WL 9039915, at *2. Of note, the parties stipulated that all claims rested on common facts. Judge Radcliffe denied debtor's jury trial request on the RESPA and FDCPA claims holding debtor's allegations were "inextricably intertwined" with the alleged contemptuous noncompliance with the confirmation and cure orders, which both were vital to the bankruptcy process. He also noted the allegations all related to either collection or servicing of the defendant's underlying claim, and adopted authority holding such to be "intertwined with the core jurisdiction of th[e] court-that is, the claims allowance process and purported violations of the automatic stay. Id. at *2-3 (quoting and adopting Alvarado v. Wash. Mut. Bank (In re Alvarado), No. 07-5089-LMC, 2008 WL 783545, at *3 (Bankr. W.D. Tex. March 19, 2008)).

MEMORANDUM OPINION-12

debtor's jury trial rights. Even were this Court to apply that test, the remaining "non-precluded" FDCPA claims are not "<u>inextricably</u> intertwined" with the § 362(k) claim. In fact, they survive preclusion precisely because they stand independent of Plaintiff's bankruptcy case. In this regard, at least one court has viewed the tests for whether a claim survives preclusion and whether a jury trial right attaches, as analogous. <u>Walch</u>, 2012 WL 4093826, at *6-7 (concluding that an Article III right [and thus by extension, a Seventh Amendment jury trial right] would attach to FDCPA claims that do not necessarily entail "bankruptcy-laden" determinations). Plaintiff thus has a right to a jury trial on Counts Three, Six, Seven and Nine of her FDCPA claim.

Under 28 U.S.C. § 157(e), the parties must give their express consent to the bankruptcy court conducting the jury trial. Plaintiff has given her consent. Because RCO did not comply with the Order's directive to advise the Court of its position, it will be given seven days to do so, again on pain of possible sanctions.

<u>Conclusion</u>:

Counts One, Two, Three (as it pertains to false representations as to the legal status of the debt), Four, Five, and Eight of the FDCPA claim will be dismissed as precluded by the remedies available under the Bankruptcy Code.

This Court has "arising under" jurisdiction of the § 362(k) claim, and "related to" jurisdiction of Counts Three (as it pertains to false representations of the amount of debt), Six, Seven, and Nine of the FDCPA claim. Plaintiff has a jury trial right on those counts. Within seven days, RCO is to advise whether it consents to this Court conducting the jury trial and entering a final judgment on the FDCPA counts. RCO is further to advise whether it consents to this Court entering a final judgment on the § 362(k) claim. Absent such consent, it must also brief why the Court lacks the constitutional authority to enter a final judgment.

// // //

// // //

// // //

// // //

1    The above constitutes the Court's findings of fact and conclusions of law under FRBP 7052.  An
2    appropriate order will be entered.

                                                  THOMAS M. RENN
                                                  Bankruptcy Judge

MEMORANDUM OPINION-14